BOBB *et al.*, *Appellants*, v. BOBB *et al.*

**Creditor's Bill:** FRAUDULENT CONVEYANCE : ESTOPPEL. B., who held land in trust for his father, conveyed it, at his father's request, in trust for his half-sister who was about to be married, and for whom his father wished to make some provision. B. drew up the conveyance himself, and at his instance his half-sister gave a receipt for the value of the property as an advancement from her father, the receipt reciting that the property had belonged to the father and was conveyed at his request. B., when he made the deed, was familiar with his father's affairs and financial condition and there was no evidence on the father's part in causing the conveyance to be made. *Held*, that B. was estopped to attack the deed by a creditor's bill.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Hitchcock, Lubke & Player* for appellants.

*Jeff. Chandler* and *S. A. Young* for respondents.

SHERWOOD, J.—The purpose of this equitable proceeding, instituted in 1878, is to subject to sale, as the property of Charles Bobb, certain real estate in the city of St. Louis to judgments recovered in 1878 against Charles Bobb, executions on such judgments having been returned *nulla bona.*

The suits which resulted in the judgments aforesaid were instituted in 1869. Prior to February 8, 1865, Charles Bobb, the father of John Bobb and of the other children, owned a certain piece of property in St. Louis, and was desirous of exchanging it with one Weaver for a piece he had ; and this was effected by Charles Bobb conveying his piece to Weaver, and the latter his piece to John H. Bobb for the use of his father. This was done for convenience of transfer.

In 1865, Cora Bobb, the half-sister of John H. Bobb, was about to be married to her present husband, James K. Taylor, and her father, Charles Bobb, being desirous of advancing her such property, and of setting her up in the world, caused John H. Bobb to convey it to Jamison as trustee for his sister. At that time it was supposed that Cora was an equal beneficiary with the other children; but afterwards it was decided she was not.

John H. Bobb drew the deed of conveyance himself, and it was at his instance that the following receipt was given :

"$3,500.00.    SAINT LOUIS COUNTY.

" Received of Charles Bobb, as an advance, property to the amount and value of the sum of thirty-five hundred dollars, being the same property conveyed to Cora Taylor's trustee by John H. Bobb, by deed bearing date ———, and which said property in reality belonged

to the said Charles Bobb, although the legal title was vested in said John H. Bobb, and said conveyance was made at the special instance and request of the said Charles Bobb.                                    CORA TAYLOR.

"Eighth February, 1865."

As appears from 'the receipt, the property thus bestowed on the daughter was no part of the trust property, of which Charles Bobb was the trustee.

There was testimony that, at the time of this conveyance, John H. Bobb was thoroughly conversant with the trust property, its books of account, its situation and surroundings, and had been for years previous, and there was testimony of a contrary effect. There were also sundry admissions made by defendants during the progress of the cause which will accompany this opinion. At the conclusion of the testimony the circuit court dismissed the bill, and the propriety of its action is questioned by this appeal.

Various grounds were urged by the defendants in the court below in support of the ruling above alluded to, but the particular ground upon which the court acted in the ruling made is not disclosed.

There is not a particle of testimony tending to show any fraudulent conduct on the part of Charles Bobb, the father, in causing the conveyance to be made. It was made out of motives of affection in order to make provision for the daughter, thus constituting a good consideration in law.

Considering the circumstances already detailed, does it lie in John Bobb's mouth to impeach and overthrow the deed which he then made? We are not of opinion that it does. This must be so, if with full knowledge of the state of the trust property, its accounts, etc., and his father's financial condition at the time, he made the conveyance now sought to be set aside and held for naught.

A court of equity will certainly not assist him to undo what he did with his eyes open, or what amounts

to the same thing, with full opportunity to have them open. And there is sufficient testimony in this record to sustain this view of the case.

Again, it appears from the receipt drawn by John H. Bobb, already set forth, and by other testimony, that the purpose of the receipt taken was to swell, the trust fund by the amount the receipt called for, and thus benefit himself correspondingly. If this be true, we are not of opinion that John H. Bobb can, by a creditor's bill, attack the transaction and overthrow it.

If he has any remedy at all, as to which no expression is necessary, he certainly has not availed himself of it. For these reasons we affirm the judgment. All concur.